SAM HIRSCH
Acting Assistant Attorney General
WILLIAM E. GERARD
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, DC 20044-7611
Telephone: (202) 305-0475
Facsimile: (202) 305-0506
Email: william.gerard@usdoj.gov

DANIEL G. BOGDEN
United States Attorney
BLAINE T. WELSH
Assistant United States Attorney (Bar No. 4790)
333 Las Vegas Boulevard South, Suite 5000
Las Vegas, Nevada 89101
Telephone: 702-388-6336
Facsimile: 702-388-6787
Email: blaine.welsh@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| CITY OF LAS VEGAS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br><br> U.S. BUREAU OF LAND MANAGEMENT, *et al.*, <br><br> Defendants. | Case No.: 2:14-cv-01566-JAD <br><br> DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AND SECOND CAUSES OF ACTION |

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The United States Bureau of Land Management ("BLM"); Neil Kornze, Director of BLM; the Las Vegas Field Office, BLM; and Gayle Marrs-Smith, Field Manager, Las Vegas Field Office (collectively, "Defendants" or "the United States"), by and through counsel, move and respectfully seek an order dismissing with prejudice the First and Second Causes of Action of the Complaint filed by the City of Las Vegas and the City of North Las Vegas (collectively, "Plaintiffs" or "the Cities") in this matter. The United States seeks dismissal of the Plaintiffs' First Cause of Action, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. The United States seek dismissal of Plaintiffs' Second Cause of Action, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, for lack of subject matter jurisdiction. The basis for this motion is articulated in the attached Memorandum of Points and Authorities.

DATED this 24th day of November 2014.

/s/ William E. Gerard
WILLIAM E. GERARD
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Washington, DC 20044-7611
Telephone: (202) 305-0475
Facsimile: (202) 305-0506
Email: william.gerard@usdoj.gov

*Attorney for Defendants*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' FIRST AND SECOND CAUSES OF ACTION**

## I.   INTRODUCTION

In their First Cause of Action, the Cities allege that Defendants have violated several provisions of the Southern Nevada Public Land Management Act, Pub. L. No. 105-263, 112 Stat. 2343 (1998), as amended (hereinafter, "SNPLMA"),[1] as a result of future decisions to be taken purportedly based on the Final Supplemental Environmental Impact Statement ("SEIS") and Record of Decision ("ROD") for the Upper Las Vegas Wash within the Las Vegas Valley Disposal Boundary. Those allegations depend, however, on the Cities' speculation regarding potential future violations, erroneous readings of SNPLMA, and inaccurate interpretations of the scope of the SEIS and ROD. Thus, even accepting the Cities' factual allegations as true, those allegations fail to support a plausible claim that Defendants have violated any provision of SNPLMA.

Specifically, the Cities allege that, because Defendants have not yet disposed of (*i.e.*, sold or transferred) particular lands within the SNPLMA disposal boundary, they have violated SNPLMA's statement of statutory purpose. Yet, as described below, that purpose provision creates no mandatory duties and the Cities' argument ignores the operative provision governing agency discretion to dispose of such lands – a provision which authorizes, but does not require, such disposals. In addition, the Cities assert that the SEIS and ROD violate SNPLMA because they would result in BLM's future denial of a hypothetical application for rights-of-way over federal land. Yet, any such violation is purely speculative, as the Cities have not alleged that they have filed any such

---

[1] SNPLMA has been amended numerous times. However, aside from changes to the boundary of lands for disposal, there have been no substantive changes through those amendments to the provisions at issue in this lawsuit – *i.e.*, Sections 2(b) through 4(d). Those sections also have not been codified in the U.S. Code.

application, have not alleged that any such right-of-way was considered as part of the SEIS or ROD, have not alleged that Defendants have actually denied any such right-of-way, and have not asserted facts that would lead to a reasonable belief that, had any such denial occurred, it would have violated the statutory provision in question. Finally, the Cities assert, on the basis of another SNPLMA provision, that BLM has violated a requirement to defer in its land disposal actions to local government decisions. Yet, that purported requirement exists nowhere in SNPLMA, let alone in the provision cited by the Cities, and any violation of the actual requirements of the cited provision are premised on the Cities' speculation about potential future BLM actions.

In light of their failure to offer factual allegations that support a plausible claim that Defendants have violated any requirement under SNPLMA, and their failure to articulate a cognizable legal theory regarding such a violation, the Cities have failed in their First Cause of Action to state a claim upon which relief can be granted. That cause of action thus should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

In addition, in the Cities' Second Cause of Action, they assert generically that Defendants' findings in the SEIS and ROD are arbitrary, capricious, and an abuse of discretion, and thus in violation of the Administrative Procedure Act ("APA"). While that APA standard of review is relevant to claims raised in their *other* causes of action, the Cities neglect to reference in their Second Cause of Action any other statute under which that standard is to be applied. By asserting a stand-alone APA claim which fails to identify a relevant statute against which APA review could proceed, the Cities' Second Cause of Action fails on its face to qualify for the APA's grant of a private right of action and waiver of sovereign immunity by the United States. As a consequence, the Cities' have

failed to establish essential predicates to jurisdiction for that count, and thus that Second Cause of

Action must be dismissed with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(1).[2]

## II.   BACKGROUND

**The Southern Nevada Public Land Management Act**. SNPLMA was created in 1998 "to

provide for the orderly disposal of certain Federal lands in Clark County, Nevada, and to provide for

the acquisition of environmentally sensitive lands in the State of Nevada." SNPLMA § 2(b). To

effectuate this purpose, under Section 4(a), BLM[3] "is authorized to dispose of lands within the

boundary of the area under" its jurisdiction in Clark County, Nevada – subject to specific conditions.

While those land disposals are excepted from the land use planning requirements of Sections 202-203

of the Federal Land Policy and Management Act of 1976 ("FLPMA"), 43 U.S.C. §§ 1712-1713,

SNPLMA expressly requires that land disposals be undertaken "in accordance with . . . [FLPMA] and

other applicable law, and subject to valid existing rights . . . ." SNPLMA § 4(a). In parallel, given that

land sold under the Act to private entities will pass to the jurisdiction of local governments, the Act

specifies that BLM and the relevant local authority "shall jointly select lands to be offered for sale or

exchange under this section[,]" that BLM "shall coordinate land disposal activities" with the local

---

[2] Under Rule 12(a)(4), the filing of this motion suspends, until the Court rules on this motion, the deadline under which Defendants must answer the Complaint. *See, e.g., Talbot v. Sentinel Ins. Co., Ltd.*, No. 2:11-cv-01766-KJD-CWH, 2012 WL 1068763, *4-5 (D. Nev. Mar. 29, 2012) (discussing and applying the majority rule that Fed. R. Civ. P. 12(a)(4)(A) suspends the time in which to file an Answer upon the filing of a motion to dismiss under Rule 12(b) that is only partially dispositive as to the claims in the complaint).

[3] This provision and other SNPLMA provisions at issue are directed to "the Secretary[,]" who is defined in the Act as "the Secretary of the Interior[,]" SNPLMA § 3(1). BLM generally administers SNPLMA on behalf of the Secretary of the Interior. BLM and its officers are the Defendants named in this suit.

authority, and that such land disposal activities "shall be consistent with local land use planning and zoning requirements and recommendations." SNPLMA § 4(d)(1).

In addition to authorizing BLM to sell land, SNPLMA also provides that, "upon application" by the relevant local authority, BLM "shall issue right-of-way grants on Federal lands in Clark County, Nevada" for specified facilities "needed for" listed purposes. SNPLMA § 4(b)(2). Similar to Section 4(a), grants for such rights-of-way under Section 4(b)(2) will be issued "in accordance with . . . [FLPMA] and other applicable provisions of law . . . ." In other provisions, not at issue in this suit, SNPLMA provides a mechanism for land exchanges and federal acquisition of environmentally sensitive land, among others. *See, e.g.,* SNPLMA §§ 4(e), 5.

**The Administrative Procedure Act**. SNPLMA does not provide a private right of action or a waiver of the United States' sovereign immunity for judicial review of its requirements. *See generally*, SNPLMA. Thus, a plaintiff seeking to challenge agency action under SNPLMA must look to the APA to supply such prerequisites to suit. In particular, APA Section 702 supplies a right of action and waiver of sovereign immunity for "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute . . . . [,]" provided that there is a violation of a substantive requirement of "a relevant statute" distinct from the APA, *see* 5 U.S.C. § 702, and provided that the agency action in question is "final agency action for which there is no other adequate remedy in a court[,]" *id*. § 704. For lawsuits invoked under APA Section 702, APA Section 706 supplies the standard for review. *See id*. § 706.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**BLM's Actions at Issue**. In response to an amendment to SNPLMA that increased the acreage within the disposal boundary,[4] and to continue its own prior efforts to identify federal lands for disposal, BLM studied the environmental impacts of the potential disposal of lands within the Congressionally-defined disposal boundary. Those studies were conducted pursuant to the National Environmental Policy Act, 42 U.S.C. §§ 4321-4370h ("NEPA"). For major federal actions significantly affecting the quality of the human environment, NEPA requires, in relevant part, that federal agencies prepare an environmental impact statement that analyzes "the environmental impact of the proposed action" and its alternatives. 42 U.S.C. § 4332 (2)(C). NEPA is a procedural statute and does not mandate a particular substantive result. *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc*., 435 U.S. 519, 558 (1978); *Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 371 (1989).

BLM implemented this NEPA review of the disposal boundary in stages. In 2004, BLM issued a final environmental impact statement ("FEIS") which evaluated the potential disposal of a broad swath of federal lands within the disposal boundary set by SNPLMA, *see* Compl. ¶ 3, lands which had not already undergone review. As a result of this study, BLM identified, within these lands, a Conservation Transfer Area ("CTA") consisting of several thousand acres of federal land containing sensitive resources. *See id*. The FEIS, and associated ROD, called for the disposal of the various lands within the CTA once a conservation agreement was signed with the relevant local authority. *See id*. The agreement would implement recommended measures within the CTA to protect the sensitive resources. *See id*. Next, BLM conducted a supplemental environmental impact statement

---

[4] *See* Clark County Conservation of Public Land and Natural Resources Act of 2002, Pub. L. No. 107-282, § 401, 116 Stat. 1994 (2002).

7

("SEIS") and issued a record of decision ("ROD") which addressed the CTA. *See id*. ¶ 5. BLM has not yet disposed of the CTA lands. *See id*. ¶ 10 (alleging that "Defendants are refusing to dispose of the 2012 CTA for the indefinite future"); *see also id*. ¶ 68.

**The Cities' Suit**. In 2012, the Cities appealed the SEIS and ROD at the administrative level, in the U.S. Department of the Interior's Board of Land Appeals, but that appeal was denied. *Id*. ¶ 34. Subsequently, the Cities initiated this suit, asserting their "First Cause of Action[:] Violation of SNPLMA[,]" their "Second Cause of Action[:] Violation of Administrative Procedure Act[,]" and two additional causes of action that raise claims under NEPA and the Declaratory Judgment Act, respectively. *See id*. ¶¶ 58-85. This Motion addresses the Cities' First and Second Causes of Action.

In the Cities' First Cause of Action, they assert that "[b]y issuing the Supplemental EIS and . . . . ROD, Defendants have violated several provisions of SNPLMA[,]" *id*. ¶ 10, and thus that "[t]he Cities are entitled to injunctive and declaratory relief setting [these] aside . . . declaring the requirements of SNPLMA, and enjoining Defendants to comply with SNPLMA." *Id*. ¶ 69. The SNPLMA provisions in question are (i) Sections 2(b), the statement of statutory "Purpose"; (ii) Section 4(b)(2), which concerns the grant of rights-of-way on federal land; and (iii) Section 4(d)(1), which applies requirements for joint selection of lands for disposal, coordination of subsequent disposal activities, and consistency of those activities with local land use planning. *See id*. ¶¶ 59-69. The Cities do not assert a violation of, or even reference, SNPLMA Section 4(a), which is the operative provision relating to the agency's discretion to dispose of land. In addition, the Cities are not challenging an actual disposal of land – but are asserting that "[b]y issuing the Supplemental EIS and . . . ROD, Defendants have violated several provisions of SNPLMA." *Id*. ¶ 10.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Cities' Complaint invokes both SNPLMA and the APA as bases for jurisdiction, although they do not expressly invoke APA Section 702 as their basis for challenging SNPLMA.[5] Further, the Cities do not mention the APA in their First Cause of Action, aside from incorporating by reference all prior paragraphs in their complaint. *See id.* ¶¶ 58-69. However, as noted above, SNPLMA does not provide a private right of action or a waiver of sovereign immunity by the United States for a suit alleging violations of that Act's requirements. As a consequence, the Cities must look to APA Section 702 to meet those requirements and to Section 706 to supply the standard of review.

That standard of review – that "[t]he [APA] requires the decision of a federal agency to be set aside if it is arbitrary, capricious, and [an] abuse of discretion, or otherwise not in compliance with law" – is asserted, without citation, in the Cities' Second Cause of Action, "Violation of [APA.]" *Id.* ¶ 71. In that count, the Cities also allege a generic violation of that standard and assert a generic entitlement to relief under the APA. *See id.* ¶¶ 72-73. Absent from that cause of action, however, are any factual allegations supporting a claim that is independent from those alleged in the SNPLMA and NEPA causes of action. Also absent from that cause of action is any reference to "a relevant statute" within the meaning of which the Cities are "adversely affected or aggrieved[,]" *see id.* ¶¶ 70-73; *compare id.* ¶¶ 58-69, 74-81.

---

[5] Compl. ¶ 15. The Cities also reference the Federal Question Statute, 28 U.S.C. § 1331, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, as bases for jurisdiction. Compl. ¶ 15. However, neither supplies a cause of action, private right of action, or waiver of sovereign immunity. *See, e.g.*, *DeVilbiss v. Small Bus. Admin.*, 661 F.2d 716, 718 (8th Cir. 1981) (the Federal Question Statute is "merely jurisdictional" and does "not create any substantive right enforceable against the United States . . .") (citing *United States v. Testan*, 424 U.S. 392, 400-02 (1976)) (remaining citations omitted); *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (the Declaratory Judgment Act "is not an independent source of federal jurisdiction" but rather a grant of an additional remedy "the availability of [which] presupposes the existence of a judicially remediable right" (citation omitted)).

**III.    PLAINTIFFS' FIRST CAUSE OF ACTION SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6)**

Federal Rule of Civil Procedure 12(b)(6) provides a defense to a claim in a pleading for "failure to state a claim upon which relief can be granted." That rule provides a basis for dismissal upon "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir. 1984)). To survive a motion to dismiss under Rule 12(b)(6), the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id*. A complaint must allege sufficient facts to, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct) (citation omitted).

Even accepting the Cities' allegations as true, those allegations do not support a plausible claim or articulate a cognizable legal theory that Defendants have violated any requirement of SNPLMA. Thus, the Cities have failed to state a claim upon which relief can be granted, and their First Cause of Action should be dismissed with prejudice.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

### A. Section 2(b), the statement of statutory "Purpose", imposes no duties that Defendants could have violated

To begin, the Cities assert that Defendants have violated Section 2(b), a statement of general statutory purpose with no affirmative obligations on behalf of Defendants, and the Cities have not alleged, and cannot allege, a violation of the operative section that governs the conduct at issue. Section 2(b), SNPLMA's statement of "Purpose[,]" simply states that "[t]he purpose of this Act is to provide for the orderly disposal of certain Federal lands in Clark County, Nevada . . . ." The Cities assert that the United States has violated this provision because it has not yet disposed of the CTA lands. Compl. ¶¶ 66, 68 ("Despite the clearly expressed Congressional intent, Defendants have refused to transfer the CTA, and ha[ve] insisted on maintaining ownership of the CTA for the foreseeable future").

On its face, however, Section 2(b) does not impose any duty to dispose of the CTA or any other lands. By its own terms and section title, this provision is merely a statement of legislative purpose. Instead, the operative SNPLMA provision governing the disposal of lands at issue here is Section 4(a) – a provision which the Cities do not reference, much less assert has been violated. That provision states that BLM, "in accordance with this Act, [FPLMA], and other applicable law, and subject to valid existing rights, *is authorized* to dispose of lands within the boundary of the area" subject to the Act. SNPLMA § 4(a) (emphasis added). This provision unambiguously empowers BLM to dispose of land, within its discretion.

Moreover, the conclusion that SNPLMA affords BLM discretion regarding disposal of the CTA lands is buttressed by the fact that, elsewhere, the Act expressly identifies certain parcels (outside the CTA) that BLM *is obliged* to dispose or transfer. For example, Section 4(b)(3) requires BLM to offer a specified parcel to Clark County, Nevada, "[w]ithin 30 days after a request by" the

11

County, "for the construction of youth activity facilities." Similarly, Section 4(g) requires BLM to transfer to Clark County specified lands which are part of the "Airport Environs Overlay District[,]" subject to various conditions. By contrast, disposal of the CTA lands at issue here is governed by Section 4(a) and BLM's discretion.

Further, even assuming for the sake of argument that Section 2(b) imposed any substantive obligations, Section 4(a) would supply the applicable standard for disposals. "A general statutory section setting forth legislative policy and purpose neither constitutes an operative section of the statute nor prevails over more specific provisions." *Council of Haw. Hotels v. Agsalud*, 594 F. Supp. 449, 453 (D. Haw. 1984); *see also Bissette v. Colonial Mortg. Corp.*, 477 F.2d 1245, 1246 n.2 (D.C. Cir. 1973). The Cities have no basis to claim that the general statement of purpose in Section 2(b) imposes a mandatory duty to dispose of land – particularly where, as in Section 4(a), the operative provision merely authorizes such disposal.

In any event, the Cities allege only that BLM has not yet transferred the CTA, and that the agency "has insisted on maintaining ownership of the CTA for the foreseeable future[,]" Compl. ¶¶ 10, 68, not that BLM has decided not to transfer or dispose of the land at any time. The Cities have pointed to no provision requiring disposal of the lands in question *at a particular time*. Thus, even assuming for the sake of argument that the United States was required to dispose of the CTA lands at some point, the Cities' allegations fail to establish a violation of that purported duty.

### B.  The Cities fail to assert any plausible violation of Section 4(b)(2)

Having failed to identify a mandatory duty to dispose of the lands at issue, the Cities turn next to a provision – SNPLMA Section 4(b)(2) – governing the grant of rights-of-way over federal lands for flood control and other infrastructure. The Cities assert a violation of that section on the basis that

the SEIS and ROD purportedly will result in a future BLM rejection of a future application by the

Cities for such rights-of-way. Yet, this argument falters by failing to identify an actual, present (as

opposed to speculative, future) violation, by relying on a mistaken understanding of the NEPA

process, as implemented in the SEIS and ROD, and by assuming, without alleging facts to support

such an inference, that any future denial of an application for a right-of-way would amount to a

violation of Section 4(b)(2). Thus, as with their allegations as to Section 2(b), the Cities' allegations

here fail to identify a remediable violation of SNPLMA – much less substantiate such a violation.

Specifically, the Cities contend that Section 4(b)(2) "requires Defendants to provide the Cities

with any and all rights of way identified by the Cities for flood control and for water and sewer

pipelines, but the Supplemental EIS and . . . ROD would prohibit Defendants from providing these

rights of way." Compl. ¶10; *see also id.* ¶¶ 59-61. Section 4(b)(2)(A) states that:

> Upon application, by a unit of local government or regional governmental entity,
> [BLM], in accordance with this Act and the Federal Land Policy and Management
> Act of 1976, and other applicable provisions of law, shall issue right-of-way grants
> on Federal lands in Clark County, Nevada, for all reservoirs, canals, channels,
> ditches, pipes, pipelines, tunnels, and other facilities and systems needed for—
>
> (i) the impoundment, storage, treatment, transportation, or distribution of water
> (other than water from the Virgin River) or wastewater; or
>
> (ii) flood control management.

The Cities' asserted violation of this provision fails on three independent grounds. First, the

Cities have failed to identify an actual, present violation of this provision by the United States.

Nowhere in their Complaint have the Cities asserted that they have made an "application" for a

"right-of-way grant[] on Federal lands[,]" as required in the provision – let alone that such an

application was rejected. *See generally*, Compl. On the contrary, as their allegations make clear, the

alleged failure to grant such a right-of-way is based on a purely speculative future event – *i.e.*, that

"the Supplemental EIS and . . . ROD would prohibit Defendants from providing" "any and all rights of way identified by the Cities for flood control and for water and sewer pipelines[.]" *Id.* ¶ 10. Dependent as it is on two layers of speculation – that, sometime in the future, the Cities will apply for such rights-of-way and that the United States will subsequently decline to grant them – this contention does not amount to a cognizable violation for which the Cities are entitled to relief.

Second, the Cities' theory underlying the supposed violation – that the SEIS and ROD will lead to a future rejection of a grant for a right-of-way – misconstrues the NEPA process and the proposed actions which were studied here. An EIS under NEPA is simply "a detailed statement" regarding a proposed federal agency action that analyzes "the environmental impact of the proposed action" and its alternatives. *See, e.g.,* 42 U.S.C. § 4332(2)(C). NEPA is a procedural statute and does not mandate a particular substantive result. *Vt. Yankee*, 435 U.S. at 558; *Marsh*, 490 U.S. at 371. As such, the findings resulting from its environmental studies do not constitute BLM's determination on the merits of a hypothetical application for a right-of-way.

Indeed, the Cities have not alleged that the FEIS and SEIS evaluated any application for a local government right-of-way across federal lands. Instead, the Complaint states that the 2004 FEIS studied the environmental impacts of *disposing* of federal lands, defining a Conservation Transfer Area for eventual disposal which was expanded under the SEIS and ROD. *See* Compl. ¶¶ 3, 5, 23.

Third, even if the Cities were correct that the findings in the SEIS/ROD could necessarily lead to a future rejection of a future application for such rights-of-way, and even if the Cities were correct that there could be a present remedy for a purely speculative future violation, they have not identified any such violation. Nothing in Section 4(b)(2) prevented BLM from undertaking the FEIS and SEIS study of the environmental impacts of disposing of federal lands. Those studies resulted in the

development of, and clarified the boundary of, a Conservation Transfer Area to address the protection of sensitive resources. That there is no violation of Section 4(b)(2) as a result of these NEPA processes is further confirmed by the absence of any applicable right-of-way application at the time that the NEPA work was accomplished. As Section 4(b)(2) itself states, its effectiveness is only "[u]pon application" for such rights-of-way, and BLM's issuance of such interest must be "in accordance with . . . [FLPMA], and other applicable provisions of law," such as NEPA. Section 4(b)(2) also requires that an applicant establish that the rights-of-way are "needed for . . . flood control management" or other specified purposes. Thus, it is not a given, as the Cities assume without offering supporting allegations, that they would be entitled to such rights-of-way upon future application, or that a future BLM rejection of a future application for such rights-of-way would violate SNPLMA.

### C.   The Cities fail to assert any plausible violation of Section 4(d)(1)

In their remaining allegations in their First Cause of Action, the Cities assert that BLM has violated a requirement which exists nowhere in SNPLMA, let alone in the cited provision, Section 4(d)(1). And any violation of the actual requirements of that provision depend on the Cities' speculation about future BLM actions.

The Cities contend that the SEIS and ROD "incorporate decisions that are not consistent with local land use planning requirements and recommendations[,]" decisions which the Cities assert violate "at least five provisions [of] SNPLMA [that] require[] BLM to defer to decisions made by the 'unit of local government'." Compl. ¶¶ 62, 64. Relatedly, the Cities allege that "[i]n violation of SNPLMA, Defendants have not coordinated land disposal activities with the Cities." *Id*. ¶ 65. Such "land disposal activities[,]" the Cities contend, include the SEIS and ROD. *Id*. ¶ 63.

15

Despite asserting that "at least five provisions" of SNPLMA "require[] BLM to defer to decisions" of local government, the Cities cite only Section 4(d)(1), *see id.* ¶¶ 10, 62-65, which states:

> (d) Selection.—
> (1) Joint selection required.—[BLM] and the unit of local government in whose jurisdiction lands referred to in subsection (a) are located shall jointly select lands to be offered for sale or exchange under this section. [BLM] shall coordinate land disposal activities with the unit of local government in whose jurisdiction such lands are located. Land disposal activities of [BLM] shall be consistent with local land use planning and zoning requirements and recommendations.

Yet, the asserted BLM failure "to defer to decisions" by local governments does not violate this provision. Nothing in Section 4(d)(1) requires BLM "to defer to decisions" by local governments, as the Cities claim. On the contrary, this section mandates that BLM and the pertinent local authority "shall *jointly* select lands to be offered for sale or exchange under this section." SNPLMA § 4(d)(1) (emphasis added). It also requires BLM to "*coordinate* land disposal activities" with the local authority – not "defer to" the local authority's decisions. *Id.* (emphasis added). Indeed, no provision of SNPLMA, let alone the provisions relevant to disposal of the CTA lands, requires BLM "to defer to decisions made by the 'unit of local government'" in its land disposal activities, as the Cities claim. *Compare* Compl. ¶¶ 62, 64 *with* SNPLMA.

Further, the Cities' attempt to read a mandatory duty for BLM to defer to local governments' land disposal decisions would render virtually meaningless the discretion afforded BLM in land disposals under SNPLMA Section 4(a) and the agency's ability to utilize the results of the 2004 FEIS and subsequent SEIS NEPA analyses, which were completed to evaluate the potential disposal of all federal land remaining inside the disposal boundary. For those specific circumstances in which Congress intended BLM to have a non-discretionary duty to dispose of land, it explicitly identified

that duty. *See, e.g.*, SNPLMA §§ 4(b)(3), 4(g). By contrast, no such intent is evident in Sections 4(a) and 4(d)(1).

Moreover, any alleged violation of Section 4(d)(1) depends entirely on the Cities' speculation regarding future actions by BLM. By that provision's terms, its requirements are triggered only when BLM is "select[ing] lands to be offered for sale or exchange under this section[,]" or is engaging in related "[l]and disposal activities[.]" Since the Cities maintain that BLM "has insisted on maintaining ownership of the CTA for the foreseeable future[,]" Compl. ¶ 68, there is no allegation that such selection for disposal or disposal activities has taken or is taking place. Indeed, the Cities have premised the alleged violations of Section 4(d)(1) not on any such actions, but rather on decisions purportedly incorporated in the SEIS and ROD. *Id.* ¶¶ 62, 64.

As to the Cities' related assertion that the SEIS and ROD are themselves "land disposal activities[,]" *id.* ¶ 63, the Cities again confuse the nature of NEPA's required procedures and their relationship to the ultimate disposal of federal lands within the SNPLMA boundary. The SEIS and ROD are not "land disposal activities" under SNPLMA. No land is disposed, sold, or transferred as part of the NEPA process.

Instead, NEPA requires the study of a proposed agency action, which documents the environmental and other consequences of the action. *See, e.g.*, 42 U.S.C. § 4332(2)(C). To implement these NEPA obligations, BLM here studied the potential for disposal of many thousands of acres of land within the statutory disposal boundary and the environmental and other consequences of such disposal, as part of a process culminating in the FEIS, SEIS, and ROD. *See* Compl. ¶¶ 3, 5, 23. Through the FEIS, SEIS, and ROD, a Conservation Transfer Area was identified, which includes thousands of acres of lands subject to disposal under SNPLMA. *See id.* However, before particular

parcels within the CTA lands can be sold or transferred, a conservation agreement or agreements must be signed, after which BLM will begin the process of disposing of those lands. *See id*. ¶¶ 3, 23 (recognizing that BLM intends to dispose of lands within the CTA, but that before such lands can be sold or transferred, a conservation agreement among the relevant authorities must be signed). Thus, the process for disposing of particular lands within the CTA occurs after, and distinctly from, the NEPA process – which is not a "land disposal activit[y.]"

## IV.   PLAINTIFFS' SECOND CAUSE OF ACTION SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(1)

In addition to the Cities' First Cause of Action, this Court also should dismiss with prejudice their Second Cause of Action pursuant to Rule 12(b)(1), as that cause of action, on its face, lacks an essential predicate to jurisdiction – a waiver of the United States' sovereign immunity.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the jurisdictional basis for a court to consider a party's claims. "Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute," *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citations omitted). Thus, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). A defendant, through a motion to dismiss pursuant to Rule 12(b)(1), may make a jurisdictional attack that is either facial or factual – a facial attack occurring when the movant "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

As part of their burden to affirmatively demonstrate that a court has jurisdiction to hear their claims, plaintiffs who raise claims against the United States and federal officials acting in their official capacity must demonstrate that the United States, as sovereign, has consented to being sued. *See, e.g., United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("the United States may not be sued without its consent and . . . the existence of consent is a prerequisite for jurisdiction."); *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). As with the statutory grant of subject matter jurisdiction, a waiver of sovereign immunity must be explicit, and is to be construed strictly and narrowly. *See, e.g., Lane v. Pena*, 518 U.S. 187, 192 (1996) (a waiver of "sovereign immunity must be unequivocally expressed in statutory text" and will be "strictly construed, in terms of its scope, in favor of the sovereign."). Section 1331 does not provide a waiver of sovereign immunity. *See, e.g., Hughes v. United States*, 953 F.2d 531, 539 n.5 (9th Cir. 1992) (citing *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir.1985); other citation omitted). Nor does the Declaratory Judgment statute. *See, e.g*., *Benvenuti v. Dep't of Defense*, 587 F. Supp. 348, 352 (D.D.C. 1984) (citations omitted).

The United States has consented to suit under APA Section 702 in limited circumstances. Specifically, the APA limits its private right of action and waiver of sovereign immunity to judicial review of agency actions where a person has suffered a "legal wrong because of agency action, or [has been] adversely affected or aggrieved by agency action *within the meaning of a relevant statute* . . . ." 5 U.S.C. § 702 (emphasis added). "The relevant statute, of course, is the statute whose violation is the gravamen of the complaint . . . ." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 886 (1990). Absent a statute with substantive standards, judicial review is precluded because there is no "law to apply" and "no meaningful standard against which to judge the agency's exercise of discretion." *Or.*

*Natural Res. Council v. Thomas*, 92 F.3d 792, 798 (9th Cir. 1996) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)). A court cannot evaluate whether an action is arbitrary, capricious or contrary to law, without a "meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Consequently, a claim which fails to identify "a relevant statute" under which APA review can proceed cannot qualify for the APA's private right of action or waiver of sovereign immunity.

Here, because the Cities' Complaint raises claims against the United States and federal officials acting in their official capacity, the Cities must demonstrate that the United States, as sovereign, has consented to being sued. However, the Cities' Second Cause of Action fails to qualify for the limited waiver of sovereign immunity provided in the APA because that count contains only a stand-alone APA claim, which invokes no "relevant statute" against which the Court could evaluate Defendants' actions. Consequently, the Cities fail, as a facial matter, to affirmatively establish this Court's jurisdiction to hear their Second Cause of Action, and thus that count must be dismissed pursuant to Rule 12(b)(1).

Specifically, in the Cities' Second Cause of Action, they reiterate APA Section 706(2)(A)'s statement that "[t]he [APA] requires the decision of a federal agency to be set aside if it is arbitrary, capricious, and [an] abuse of discretion, or otherwise not in compliance with law." Compl. ¶ 71; *see also* 5 U.S.C. § 706(2)(A). The Cities then assert a generic violation and entitlement to relief. *See* Compl. ¶¶ 72-73 (asserting that "[a]gency decisions set out in the 2012 Supplemental EIS and 2012 ROD are arbitrary, capricious, and [an] abuse of discretion, or otherwise not in compliance with law" and that "[t]he Cities are entitled to injunctive and declaratory relief setting aside the Supplemental EIS and 2012 ROD, declaring the requirements of the APA, and enjoining Defendants to comply with

the APA"). Absent from that Cause of Action, however, are any factual allegations supporting a claim that is independent from those alleged in the SNPLMA and NEPA causes of action and any reference to "a relevant statute" within the meaning of which the Cities are "adversely affected or aggrieved[,]" *see id.* ¶¶ 70-73; *compare id.* ¶¶ 58-69, 74-81.

This cause of action fails to identify "a relevant statute" the standards of which judicial review is authorized under APA Section 702. *See* 5 U.S.C. § 702. Indeed, it is well-settled that a plaintiff cannot bring a stand-alone allegation that an agency decision is "arbitrary and capricious" and therefore violates the APA. Rather than imposing substantive requirements, the APA provides the framework for review of allegations that an agency has violated some *other* underlying substantive statutory requirement. *See Or. Natural Res. Council*, 92 F.3d at 798 (court must have "law to apply" under the APA); *El Rescate Legal Servs. v. Exec. Office of Immigration Review*, 959 F.2d 742, 753 (9th Cir. 1991) ("[t]here is no right to sue for a violation of the APA in the absence of a 'relevant statute' whose violation 'forms the legal basis for [the] complaint'") (citing *Lujan*, 497 U.S. at 882-83); *Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs*, 132 F. Supp. 2d 876, 889 (D. Or. 2001) ("Review under the [APA] requires references to the legal duty set forth in the governing substantive statute"); *Rocky Mountain Oil & Gas Ass'n v. U.S. Forest Serv.*, 157 F. Supp. 2d 1142, 1145 (D. Mont. 2000), *aff'd* 12 F. App'x 498 (9th Cir. 2001) ("[a]rbitrary and capricious review cannot be conducted under the APA independent of another statute").

The Cities' claims under SNPLMA (contained in their First Cause of Action) and NEPA (contained in their Third Cause of Action) must invoke the APA's standard of review. But that is a separate question from whether the Cities' Second Cause of Action satisfies the jurisdictional prerequisites. Because the Cities' stand-alone APA count fails to identify the "relevant statute whose

violation forms [its] legal basis," *El Rescate Legal Servs.*, 959 F.2d at 753 (internal quotation marks omitted), there are no relevant statutory standards against which to measure its claims. Accordingly, the United States has not consented to suit for, and the Court lacks jurisdiction to address, those claims. That Second Cause of Action thus must be dismissed.

## V.   CONCLUSION

Because the Cities' factual allegations, contained in their Complaint, fail to establish a plausible claim that Defendants have violated any requirement under SNPLMA, or have failed to articulate a cognizable legal theory regarding such a violation, the Cities have in their First Cause of Action "fail[ed] to state a claim upon which relief can be granted." Thus, that First Cause of Action must be dismissed with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

In addition, because the Cities' Second Cause of Action contains only a stand-alone APA claim and fails to identify a relevant statute against which APA review could proceed, that count fails on its face to qualify for the APA's waiver of sovereign immunity, which is an essential predicate to jurisdiction. Thus, the Cities' Second Cause of Action also must be dismissed with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(1).

**PROOF OF SERVICE**

     I, William E. Gerard, certify the following individuals were served with a copy of **Defendants' Motion to Dismiss Plaintiffs' First and Second Causes of Action** on the date and via the method of service identified below:

     <u>Electronic Case Filing</u>:

     Bradford R. Jerbic  bjerbic@lasvegasnevada.gov
     Philip R. Byrnes  pbyrnes@lasvegasnevada.gov
     Lawrence S. Bazel  lbazel@briscoelaw.net

     *Attorneys for City of Las Vegas*

     Lawrence S. Bazel  lbazel@briscoelaw.net
     Sandra Douglass Morgan  morgans@cityofnorthlasvegas.com

     *Attorneys for City of North Las Vegas*

     DATED this 24th day of November 2014.


                     <u>/s/ William E. Gerard</u>
                     WILLIAM E. GERARD